PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-7533

RYRICKA NIKITA CUSTIS,

Plaintiff - Appellant,

v.

KEITH DAVIS, Warden, Sussex I State Prison; S. EVANS, Records Department
Head at Sussex I State Prison; M. WOODRUFF, Medical Department Head at
Sussex I State Prison; C. W. LANE, Lt. at Sussex I State Prison,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at
Norfolk.  Mark S. Davis, District Judge.  (2:15-cv-00142-MSD-TEM)

Argued:  December 6, 2016                          Decided:  March 23, 2017

Before GREGORY, Chief Judge, and TRAXLER and DIAZ, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Gregory wrote the opinion, in
which Judge Traxler and Judge Diaz joined.

**ARGUED**:  Martha Francine Hutton, O'MELVENY & MYERS LLP, Washington, D.C.,
for Appellant.  Matthew Robert McGuire, OFFICE OF THE ATTORNEY GENERAL
OF VIRGINIA, Richmond, Virginia, for Appellees.  **ON BRIEF**:  Saul Cohen,
O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Mark R. Herring,
Attorney General of Virginia, Stuart A. Raphael, Solicitor General, Trevor S. Cox,
Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA,
Richmond, Virginia, for Appellees.

GREGORY, Chief Judge:

Ryricka Custis was an inmate at Sussex I State Prison.  Because he is missing toes on his right foot, the Virginia Department of Corrections medical staff required that Custis be assigned to a bottom bunk in a bottom-tier cell.  He originally received a compliant bunk assignment, but was later temporarily moved to an upper-tier cell.  He fell and injured himself while ascending the stairs to his upper-tier cell.

Custis pursued his prison's administrative grievance process, and then filed suit. The district court sua sponte dismissed Custis's complaint on the ground that he failed to properly exhaust his administrative remedies.  For the reasons below, we vacate the district court's dismissal and remand for further proceedings.

I.

Because Custis appeals the district court's dismissal for failure to properly exhaust his administrative remedies, we first provide an overview of the prison's grievance procedure, to the extent that it is explained in the record.  We then review Custis's own administrative grievance timeline.

A.

Prisons in Virginia must follow the Virginia Department of Corrections Offender Grievance Procedure, which provides a basic grievance process and timeline.  The Offender Grievance Procedure also requires that each prison prepare an Implementation Memorandum.  Unfortunately, the record does not include Sussex I's Implementation

2

Memorandum. As a result, we discuss only the procedures described in the statewide policy.

If an inmate wishes to submit a Regular Grievance, he must first submit an Informal Complaint. The prison's staff must respond to the Informal Complaint within fifteen days of receipt.

If the prison's response to the inmate's Informal Complaint fails to resolve the issue, the inmate may submit a Regular Grievance. To be timely, a Regular Grievance must be submitted "within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident," except for certain circumstances outside the scope of this case. Operating Procedure 866.1(VI)(A)(1) (hereinafter "OP"). It is the inmate's responsibility to submit an Informal Complaint early enough to ensure that the Informal Complaint will be resolved in time to submit a Grievance.

The Offender Grievance Procedures note that inmates may grieve only one issue per grievance form and must attach any documentation that was required during the inmate's attempt at informal resolution. OP 866.1(VI)(A)(2)(a). According to the Virginia Department of Corrections grievance form, grievances can be rejected upon intake for reasons such as alleging a non-grievable issue, submitting a repetitive grievance, using vulgar or threatening language, or providing insufficient information. *See* J.A. 9.

If the submitted Regular Grievance fails to meet the criteria for acceptance, the grievance must be returned to the inmate "within two working days" from the date it was received. OP 866.1(VI)(B)(4). At that point, the inmate may appeal the denial by

3

sending the rejected Regular Grievance "within five calendar days of receipt to the appropriate Regional Ombudsman." OP 866.1(VI)(B)(5).

## B.

Custis was moved to an upper-tier cell on August 18, 2014. On September 2, 2014, he fell while ascending the stairs to his cell, injuring his neck and back. He filed an Informal Complaint on September 11, 2014. On September 17, 2014, his Informal Complaint was denied; according to the prison's response, the prison was repairing his cell as he requested, and his assignment was made "based on open compatible available beds with a bottom bunk." J.A. 10.

Custis filed his Regular Grievance on September 18, 2014. The Sussex I State Prison Grievance Office received his Regular Grievance on September 25, 2014. It rejected the grievance that same day for insufficient information, and instructed Custis to submit within five days "the date when you were placed on the upper tier." J.A. 9. Custis amended his Regular Grievance, and the Grievance Office received his amended Regular Grievance on October 1, 2014. It then denied his Regular Grievance on that same day because it was late. Because, according to the Grievance Office, Custis had been transferred to an upper-tier cell on August 18, 2014, he needed to submit his Regular Grievance by September 17, 2014.

Custis tried to appeal this decision to his Regional Ombudsman on October 1, 2014. He mailed the appeal to the Richmond Ombudsmen Services Unit, which he alleges was the only address he found in the Offender Grievance Procedures, and which he contends was characterized as his Regional Ombudsman's employer. Unfortunately,

4

his Regional Ombudsman was at a different address--one that is not listed in the Offender Grievance Procedures. The Richmond Ombudsman Services Unit received his appeal on October 6, 2014, and returned it with a letter dated October 7, 2014, informing Custis of the correct mailing address for his Regional Ombudsman. Custis then re-mailed his appeal, which the Regional Ombudsman received on October 15, 2014. On October 20, 2014, the Regional Ombudsman rejected his appeal because it was untimely sent.

Custis then filed this lawsuit. The district court sua sponte ordered Custis to "submit documentation of administrative exhaustion," and stated that Custis "may show exhaustion of administrative procedures by submitting copies of the grievances filed, of all levels of appeal, and of all responses to the grievances and appeals." J.A. 16. Custis complied by submitting his prior grievances, rejections, and medical order. The district court then dismissed his claim for failure to exhaust administrative remedies because he failed to follow the prison's grievance procedure timeline.

Custis timely appeals.

## II.

We review de novo a district court's dismissal for failure to exhaust available administrative remedies. *See Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 218 (4th Cir. 1997) (stating that whether plaintiff properly exhausted all administrative remedies is a question of law reviewed de novo); *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014) (same). Custis raises two issues on appeal: (1) did the district court err when it sua sponte examined whether Custis administratively

exhausted his claims; and if it did not err, (2) did the district court err when it found that Custis failed to exhaust his available administrative remedies. We hold that the district court improperly sua sponte examined Custis's administrative exhaustion requirement. We therefore vacate the district court's dismissal and remand for further proceedings.

## A.

The Prison Litigation Reform Act ("PLRA") modified inmates' litigation procedures in order to stem the high volume of claims filed in federal court by inmates. Relevant here, inmates may file suits about prison conditions only if "administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

But an inmate does not need to demonstrate exhaustion of administrative remedies in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("[I]nmates need not plead exhaustion, nor do they bear the burden of proving it."). Instead, failure-to-exhaust is an affirmative defense that the defendant must raise. *Jones*, 549 U.S. at 216. Exceptions to this rule, which allow a court to sua sponte dismiss a complaint for failure to exhaust administrative remedies, are rare. We examine two asserted exceptions.

## 1.

A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies. For example, if a complaint "show[s] that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense." *Jones*, 549 U.S.

6

at 215. But such instances are "rare case[s]." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Here, it was not apparent from the face of Custis's complaint that he had failed to exhaust his administrative remedies. Custis alleged that he "attempted to exhaust [his] Administrative remedies," that his grievance was dismissed as "untimely," and that he "appealed that determination to the highest level available." J.A. 14. Indeed, the district court itself recognized that Custis's complaint, standing alone, did not make apparent whether Custis exhausted, or failed to exhaust, his administrative remedies; it ordered Custis to provide further documentation for its independent inquiry into Custis's exhaustion of administrative remedies.

Custis's allegation that he "attempted" to exhaust his administrative remedies does not necessarily imply that he attempted, but did not, exhaust his administrative remedies. It may equally imply that he attempted, but could not, exhaust his administrative remedies--and thus, that he exhausted all remedies that were available to him. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). This is especially true here, where Custis's suit requires the court to review whether the procedures that the prison considered available were, in fact, available to him. Thus, Custis's complaint did not present the rare, exceptional instance where administrative exhaustion was apparent on the complaint's face.

2.

Appellees allege a second instance in which a court may sua sponte dismiss an inmate's complaint for failure to exhaust administrative remedies: when the court has given the inmate an opportunity to address or respond to the alleged failure to exhaust.

7

Appellee's Br. 29-31. But it is not clear that this exception, created before *Jones*, remains good law. We hold now that this exception does not survive post-*Jones*.

Before *Jones*, this Court allowed district courts to sua sponte dismiss an inmate's complaint where exhaustion was not apparent in his pleading, so long as the court gave the inmate "an opportunity to address the exhaustion question." *Anderson*, 407 F.3d at 675. In *Jones*, the Supreme Court held that failure to exhaust is an affirmative defense, and that "inmates are not required to specially plead or demonstrate exhaustion in their complaint." 549 U.S. at 216. In doing so, the Court rejected the argument that "Congress implicitly meant to transform exhaustion from an affirmative defense to a pleading requirement by the curiously indirect route of specifying that courts should screen PLRA complaints and dismiss those that fail to state a claim." *Id.*

After *Jones*, this Court held that, where exhaustion is not apparent from an inmate's pleading, "a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." *Moore*, 517 F.3d at 725 (4th Cir. 2008). *Moore* supported this holding with a citation to *Anderson*. But in *Moore*, the district court did not raise administrative exhaustion sua sponte; the defendants raised it as an affirmative defense. And this Court characterized Moore's response to the defense as his "opportunity to respond." *Id.* Thus, *Moore* narrowly addresses--and correctly upholds--courts' ability to dismiss complaints for failure to exhaust administrative remedies when the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense.

8

Appellees allege that *Moore* reaffirms *Anderson*'s holding: Courts, reviewing a complaint where failure-to-exhaust is not apparent on its face, may require the inmate to address exhaustion and then dismiss based on failure to exhaust.[*] But permitting courts to sua sponte screen complaints and demand further documentation of exhaustion in such circumstances would frustrate the principles laid out in *Jones* and turn the affirmative defense into a pleading requirement. *See, e.g.*, *Byrd v. Stirling*, 144 F. Supp. 3d 803 (D.S.C. 2015) (dismissing complaint for failure to exhaust administrative remedies because complaint failed to affirmatively demonstrate exhaustion and district court gave inmate "opportunity" to respond by demanding documentation of exhaustion). Indeed, the district court's actions here--requiring Custis, whose complaint was unclear, to demonstrate exhaustion, and considering this requirement an opportunity to address exhaustion--demonstrate the tension between *Anderson* and *Jones*. As a result, to the extent that *Anderson* allows courts to sua sponte dismiss complaints where exhaustion is unclear so long as an inmate receives only an opportunity to address the issue, it is irreconcilable with *Jones* and cannot survive.

---

[*] Appellees allege that this Court's unpublished decisions support holding that *Moore* affirmed *Anderson*. But these decisions are nonbinding and--by and large--state instead that courts may sua sponte dismiss complaints if they demonstrate failure to exhaust on their face and if the inmate has an opportunity to respond. *Compare, e.g.*, *Corey v. Daniels*, 626 F. App'x 414 (4th Cir. Oct. 6, 2015) *and Kilpatrick v. Hollifield*, 592 F. App'x 199 (4th Cir. Feb. 3, 2015) (Mem.) *with Bustillo v. Beeler*, 495 F. App'x 343 (4th Cir. Oct. 16, 2012) (stating that district court may sua sponte dismiss complaint so long as inmate has opportunity to address exhaustion).

3.

For these reasons, the district court erred when it sua sponte examined Custis's exhaustion of available administrative remedies. We vacate its dismissal and its finding that Custis failed to exhaust administrative remedies and remand for further proceedings.

B.

Because the record is incomplete and the inquiry premature, we do not decide whether Custis exhausted all of his available administrative remedies. We note our concern, however, as to whether Virginia's procedure provided available remedies that Custis failed to exhaust. For example, it is unclear to us--and would likely be unclear to Custis--whether Custis had to submit his Regular Grievance within thirty days of his cell-transfer or his injury; the rules are silent on the point. Moreover, Custis's appeal was rejected as untimely, in part because the rules required him to mail his appeal to an address nowhere to be found in the Offender Grievance Procedures. We hope that further fact-finding in the district court will shed light on this process.

*VACATED AND REMANDED*